In 12 Pa., 273, COULTER, J., said that the observations of Judge Duncan will not be sustained by a careful inspection of the case.

In 18 Pa., 432, Lewis, J., sustained the criticism of Judge Duncan.

In 9 Watts, 353, Kennedy, J., followed the Bank of North America *v.* Barriere.

In 1 Phila., 283, the trial judge instructed the jury that the endorsement of a note by the defendant after maturity was equivalent to the making of a new note. The court in banc made absolute a rule for a new trial, saying: "The judge undoubtedly had in his eye the case of Bank of North America *v.* Barriere, 1 Yeates, 360, which is to the point, and a dictum of judge Kennedy in Leidy *v.* Tammany, 9 Watts, 353, which seems to give the plaintiff an election to treat such an endorsement as a new note. Yet the commercial law seems now to be very well settled, as stated by Chancellor Kent, 3 Com., 93, that if a bill or note be negotiated after it is due, yet a demand must be made upon the drawer or maker within a reasonable time, and notice given to the endorser, in order to charge him, equally as if it had been payable at sight or negotiated before it was done. And our own cases of McKinney *v.* Crawford, 8 S. & R., 351, and Brezer *v.* Wightman, 7 W. and S., 264, fully sustain that position."

Referred to in 29 Pa., 532. See also Tyler *v.* Young, 30 Pa., 143.

# Thomas M'Intire and Isabella his wife, late Isabella Neill, Joseph Donaldson, Thomas Neill and Hercules Courtney, excr's. of William Neill, *against* Henry Cunningham.

It is no ground for a new trial, that the judge who tried the cause thought that the evidence preponderated for one party, when the jury found for the other party.

MOTION for a new trial.

Mr. Justice Shippen now reported the evidence, which appeared before him and Mr. Justice Bradford on the trial at Carlisle, on the 14th May last, as follows:

The suit was a *scire facias* upon a judgment obtained in the Common Pleas of Cumberland county, in October term 1775, by the plaintiff's testator against the defendant. Mr. James Wilson appeared on the docket as attorney of the plaintiff, on which there was an entry in July 1779, of "debt and costs paid."

*364] *The defendant under his plea of payment to the *scire facias*, produced the receipt of Mr. George Noarth for 463l. 8s. 2d. in full of debt and costs at the foot or on the back of the plaintiff's account, signed "George Noarth for "Jas. Wilson, attorney for plaintiff," dated 24th October 1779. The plaintiffs did not contend but that George Noarth

had received the money. The principal question was, whether a payment to Noarth was a payment to the plaintiff?

Noarth was at the time of giving the receipt, a practising attorney of the Court of Common Pleas of Cumberland county. The defendant contended, that Mr. Wilson the plaintiff's attorney, having at that time left off the practice in that county, had put his business into the hands of Noarth, and that in the course of his doing that business, he had received this debt.

The proof on the part of the defendant, arose in part from the deposition of Mr. Justice Yeates, who swore, that after January term 1779, George Noarth was a practising attorney residing in Carlisle and had the custody of Mr. Wilson's papers; and John Glen further swore, that Noarth lodged in his house at Carlisle for two months, and was possessed of a key to a box of Mr. Wilson's in the house of John Agnew, esq.; that upon a particular occasion he went to Agnew's with Noarth, who after searching some time, took out a bond which he wanted.

On the part of the plaintiffs, it was contended, that Noarth was not the attorney of the testator; he had no authority either from him or Mr. Wilson to receive the money; even Mr. Wilson himself would have had no authority to receive the money after such a length of time, it being four years after the judgment, and when the continental money had depreciated 30 for 1.

The evidence on which the plaintiffs chiefly relied, was the deposition of John Agnew aforesaid, who swore, that when Mr. Wilson left the Cumberland court, he left his papers in a box in the deponent's custody, with directions when he gave out the papers, to take receipts; that he never delivered to Noarth any account of Neill against Cunningham, as he believed, nor ever received any written or other order from Mr. Wilson to deliver Noarth any of his papers. Mr. Wilson's directions did not prevent the attornies of the court from having access to the papers, and that the deponent had since delivered the box, containing the papers, to Thomas Smith, esq.

Upon this evidence, and the arguments of counsel, the court left it to the jury to say, whether Noarth had any authority to receive the money; they suggested that as Noarth was certainly not obliged to receive it, there might possibly have been some * collusion between him and the defendant. The jury however found for the defendant. [*365

Mr. Ingersoll for the plaintiffs, insisted, that great injustice had been done by the verdict. A re-examination was only asked for. The box of papers had always remained in Mr. Agnew's possession, until he delivered it over to Judge Smith. This shews clearly, that Mr. Wilson had given no power to Noarth to transact his business; but if he even had, **it** is a

[M'Intire et al. *v.* Cunningham.]

maxim, that *delegata potestas non potest delegari.* 2 Inst. 597. Noarth had died insolvent, and Mr. Wilson would become chargeable to the plaintiffs for the debt, if judgment was rendered on the verdict.

Mr. Tilghman for the defendant, admitted, that the payment of continental money in October 1779, was certainly a hard case, but contended that what the jury had done, was perfectly right, under the evidence before them, and all the circumstances.

The plaintiffs had experienced an evil, incident to the late war, to which no human wisdom could prescribe a full remedy. The fact was fairly left by the court to the jury.

*Per Curiam.* Both parties gave evidence to the jury, on the points by them respectively contended for, and it was wholly submitted by the judges who tried the cause to the jury for their decision. It was left to them on the points, whether Mr. Noarth acted under a general authority from Mr. Wilson, or had intruded himself into the business, and whether he had been guilty of any collusion with the defendant. The jurors may themselves have known may facts respecting Mr. Noarth's transaction of Mr. Wilson's former business, and from thence inferred the delegation of an authority to him. The matter had been long pending, and to have required full proof of an authority from Mr. Wilson, after so many years elapsed, would have been highly unreasonable. Nor should it be forgotten, that if an attorney had refused to receive continental money, for his clients in Cumberland county, in October 1776, he would have been refused the liberty of practising in that character. It is no reason to grant a new trial, that the judges who tried the cause thought that the evidence preponderated in favor of the plaintiffs, and summed up the evidence rather in that way. The rule to shew cause why a new trial should not be granted, must be discharged, and judgment entered for the defendant.

[Vid. 1 Cha. Ca. 95, 96.    1 Term Rep. 710.    Doug. 600. 4 Term Rep. 120.    Campbell's lessee *v.* Sproat *et al.*]

*366]    *Overseers of the Poor of Dromore township, in Lancaster county *against* Overseers of the Poor of West Hanover township, in Dauphin county.

Order of removal of a pauper must state, that complant was made by the overseers of the poor of the township removing, and an adjudication or assertion, that the pauper was likely to become chargeable; otherwise the order will be bad.

THIS was an appeal by the plaintiffs from the Court of